1   Timothy R. Hanigan (State Bar No. 125791)
    trhanigan@gmail.com
2   Arthur Carvalho, Jr. (State Bar No. 125370)
    acarvalho@lhcllp.com
3   LANG, HANIGAN & CARVALHO, LLP
    21550 Oxnard Street, Suite 760
4   Woodland Hills, California 91367
    Telephone:  (818) 883-5644
5   Facsimile:   (818) 704-9372

6   Attorneys for Plaintiffs
    808 Holdings, LLC
7

8              UNITED STATES DISTRICT COURT
       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
9

10  808 HOLDINGS, LLC, a California limited      )   Case No.: CV12-2078 CAS (Ex)
    liability company,                           )
11                                               )   SECOND AMENDED COMPLAINT FOR:
                       Plaintiff,                )
12                                               )   (1) DIRECT COPYRIGHT
              vs.                                )       INFRINGEMENT -17 U.S.C. §501;
13                                               )   (2) CONTRIBUTORY COPYRIGHT
    HUNTER HANCOCK, an individual;               )       INFRINGEMENT; and
14  ROBERT L. BYRUM, JR., an individual;         )   (3) NEGLIGENCE
    STUART WAINBERG, an individual;              )
15  ARAVIND TUKAKULA, an individual; and         )
    HUANG LIEN, an individual; as members of     )
16  the COLLECTIVE OF JANUARY 3, 2012            )
    SHARING HASH                                 )
17  E37917C8EEB4585E6421358FF32F29CD63           )
    C23C91ON, and DOES 1 through 10,             )
18  inclusive,                                   )
                                                 )
19                     Defendants.               )
                                                 )
20                                               )
                                                 )
21  _____     )

22

23       Plaintiff, 808 Holdings, LLC ("808 Holdings" or "Plaintiff") brings and files this complaint

    against multiple unknown Defendants and alleges as follows:
24

25                        I.  NATURE OF THE CASE

26       1.     808 Holdings is the registered owner, and exclusive right holder, of the copyright for

    the motion picture, "Brandon & Pierce Unwrapped" (hereinafter the "Motion Picture").  Plaintiff is
27

    informed and believes and based thereon alleges that the U.S. Copyright Office received Plaintiff's
28

LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
(818) 883-5644

---

                                   1
                    *Complaint for Copyright Infringement*

1  full and complete copyright application on or about December 22, 2011. Receipt of a full and

2  complete copyright application satisfies the registration requirements of the U.S. Copyright Office

3  as well as this jurisdiction. Therefore, Plaintiff holds a federally registered copyright of the Motion

4  Picture from the United States Copyright Office.

5       2.     All Doe defendants sued herein (collectively "Defendants"), acted in a collective and

6  interdependent manner to infringe Plaintiff's copyright protected work using BitTorrent file transfer

7  protocol.

8       3.     Because of the relative simplicity and ease of BitTorrent, even a single unlawful

9  copy is extremely damaging to Plaintiff's intellectual property rights. Each time a Defendant

10  unlawfully distributes Plaintiff's Motion Picture to others, those individuals can then distribute that

11  infringing copy to others in an interconnected collective that builds upon itself with each new

12  distribution. The collective builds upon its prior infringements to grow infinitely larger,

13  effectuating a worldwide epidemic of infringements upon Plaintiff's copyright protected work.

14       4.     Plaintiff seeks relief for the Defendants' systematic and continuous infringement of

15  Plaintiff's copyright in the Motion Picture, and for injunctive relief to interdict the Defendants from

16  continuing their unabashed infringement of Plaintiff's exclusive rights.

17                 **II. JURISDICTION AND VENUE**

18       5.     This Court has subject matter jurisdiction over Plaintiff's claims for copyright

19  infringement and related claims pursuant to 17 U.S.C. §§ 101, et seq., and 28 U.S.C. §§ 1331 and

20  1331(a).

21       6.     Defendants reside in, solicit, transact, and/or are doing business within the

22  jurisdiction of this Court; they have committed unlawful and intentional tortuous acts both within

23  and outside the jurisdiction of this Court with the full knowledge that their acts would cause injury

24  in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit

25  the Court's exercise of personal jurisdiction over each.

26       7.     Plaintiff's claims arise out of the Defendants' conduct which gives rise to personal

27  jurisdiction over Defendants. In taking the affirmative action of both downloading and uploading

28  an audiovisual file of Plaintiff's Motion Picture, Defendants engaged in intentional acts. As the file

contained Plaintiff's name as well as a California address for its custodian of records, Defendants knew or should have known - and only could not have known through willful blindness - that the copyright belonged to a California entity; an entity that resides in this jurisdiction and thus Defendants expressly targeted their infringing actions and caused damages so as to take place in this Court's jurisdiction.

8.      Plaintiff is well-known as a California corporation and the adult entertainment industry as a whole, including Plaintiff's corporation,  is commonly known to be centered throughout the State of California.  There was clearly foreseeable harm in this jurisdiction, and Defendants' conduct caused harm that they knew or should have known was likely to be suffered in this forum.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a).  As this is a copyright infringement action, venue is proper in any judicial district in which a Defendant resides or may be found.  Furthermore, although the true identities of each and every member of the collective formed by the Defendants is unknown to the Plaintiff at this time, on information and belief, each Defendant may be found in this District and/or a substantial part of the infringing acts complained of occurred in this District or were expressly targeted at this District.  Defendants can reasonably anticipate being sued in this District.

### III.  THE PARTIES

10.      808 Holdings is a limited liability company organized and existing under the laws of the State of California.  808 Holdings does business under the names "Cody Media" and "SeanCody.com."

11.      The true names and capacities of Defendant Does 1-10, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Upon information and belief, the Doe Defendants are individuals who are consciously engaged in directing, controlling, ratifying, or otherwise participating in the reproduction, distribution and infringement, or who consciously and directly encourage, direct or materially contribute to the reproduction, distribution, and infringement of Plaintiff's Motion Picture, but whose identity is presently unknown.

12.     Each named Defendant was previously known to Plaintiff only by the unique Internet Protocol ("IP") address, which was assigned to them by each Defendant's Internet Service Provider ("ISP") on the specific date and at the specific time at which the infringing activity of each Defendant was observed.  The IP address of the account each Defendant used to access the Internet, together with the date and time at which his or her infringing activity was observed, is alleged herein below and through that same unique identifier each Defendant was implicated by their corresponding ISP during early discovery as the account holder associated with the specific IP.

13.     The Defendants are a group of BitTorrent users - "peers" - whose computers are collectively interconnected and interdependent upon each other for the sharing of a unique file, otherwise known as a "swarm."  Each and every BitTorrent swarm is associated with a specific and unique "hash."  A hash is a unique identifier for a particular file (in this action, Plaintiff's Motion Picture), created by an algorithm developed and implemented by the National Security Agency. The unique hash file associated with the Motion Picture in the instant action is identified as E37917C8EEB4585E6421358FF32F29CD63C23C91 (herein identified as "E379 Hash").

14.     Each of the Defendants  republished and duplicated Plaintiff's Motion Picture.  They not only replicated the exact same Motion Picture, but all of the Defendants' IP addresses republished, duplicated, and replicated the exact same copy and exact same hash file.  Thus, all Defendants replicated and shared with each other the precise and exact same file and portions thereof in a completely interconnected and collective effort - dependent on one another to achieve their nefarious ends - to deprive Plaintiff of the exclusive rights afforded to it via the Copyright Act.

15.     Plaintiff is informed and believes and based thereon alleges that each of the Defendants was and is the agent of the other Defendants, acting within the purpose and scope of said agency.  Plaintiff is further informed and believes and based thereon alleges that each of the Defendants authorized and ratified the conduct herein alleged of each of the other Defendants.

16.     Information obtained in discovery has lead to the identification of Defendants' true names and has permitted Plaintiff to amend this Complaint to identify each discoverable Defendant.

//

//

*Complaint for Copyright Infringement*

17.     Plaintiff is informed and believes and based thereon alleges, that each of the Defendants performed, participated in, abetted in some manner, and is responsible for, the acts described in this Complaint and proximately caused the damages resulting therefrom.

18.     Defendants engaged in their copyright infringement scheme together.  They all used the same torrent-sharing technology to coordinate their collective copyright theft; they were all members of the same exact swarm on the same exact date; they all used the same exact tracker file; they all shared and republished the same exact motion picture; and they all shared the same exact hash file of the Motion Picture with each other and other individuals on the same exact date, January 3, 2012.

19.     The torrent swarm in this case is not an actual entity, but is rather made up of at least 10 individuals, acting in concert with each other, to achieve the common goal of infringing upon the Plaintiff's copyrights both by illegal duplication and distribution of Plaintiff's Motion Picture.

### Defendant Hunter Hancock

20.     Defendant Hunter Hancock ("Hancock") is the registered owner of the following IP address: 76.219.64.125.

21.     Defendant Hancock, without authorization, reproduced and distributed Plaintiff's copyright protected  Motion Picture by downloading bits of the digital file identified as Hash E379 from various BitTorrent peers.  As Defendant Hancock downloaded pieces of the file from these peers, he made those pieces available for immediate, as well as future, downloading by other BitTorrent peers including the other Defendants.

22.     The infringing activity took place on January 3, 2012 at 12:00 AM UTC.

23.     Plaintiff is informed and believes and based thereon alleges that Defendant Hancock continued to make pieces of the hash file available to other torrent peers for *at least* the remainder of the day, thereby making the Motion Picture, or pieces of it, available for the other swarm members, including the subsequently named Defendants.

24.     Defendant Hancock was the first one detected distributing the Motion Picture. Defendant Hancock is, on information and belief, the initial propagator of the E379 in the torrent swarm of January 3, 2012.

**Defendant Doe 2**

25.     Defendant Doe 2 is unknown, but used the following IP address:     71.126.6.52.

26.     Doe 2 used this IP address to conduct the illegal activities complained of herein, including, but not limited to, the illegal distribution and republication of Plaintiff's copyright protected Motion Picture.  Defendant conducted his infringing activities  through the use of the E379 Hash to an incalculable number of other individuals, including those named in the instant action.

27.     The infringing activity took place on January 3, 2012 at 12:00 AM UTC, at the exact same time as Defendant Hancock.

**Defendant Robert L. Byrum, Jr.**

28.     Defendant Robert L. Byrum, Jr., ("Byrum") is the registered owner of the following IP address:     98.214.232.174.

29.     Defendant Byrum used this IP address to conduct the illegal activities complained of herein, including, but not limited to, the illegal distribution and republication of Plaintiff's copyright protected Motion Picture.  Defendant conducted these infringing activities  through the use of the E379 Hash to an incalculable number of other individuals, including those named in the instant action.

30.     The infringing activity took place on January 3, 2012 at 12:25 AM UTC, 25 minutes after Doe 2.

**Defendant Stuart Wainberg**

31.     Defendant Stuart Wainberg ("Wainberg") is the registered owner of the following IP address:     71.172.63.43.

32.     Defendant Wainberg used this IP address to conduct the illegal activities complained of herein, including, but not limited to, the illegal distribution and republication of Plaintiff's copyright protected Motion Picture.  Defendant conducted these infringing activities  through the use of the E379 Hash to an incalculable number of other individuals, including those named in the instant action.

//

6

33. The infringing activity took place on January 3, 2012 at 1:37 AM UTC, 1 hour and 12 minutes after Doe 3.

### Defendant Aravind Tukakula

34. Defendant Aravind Tukakula is the registered owner of the following IP address: 98.218.1.186.

35. Defendant Tukakula used this IP address to conduct the illegal activities complained of herein, including, but not limited to, the illegal distribution and republication of Plaintiff's copyright protected Motion Picture. Defendant conducted these infringing activities through the use of the E379 Hash to an incalculable number of other individuals, including those named in the instant action.

36. The infringing activity took place on January 3, 2012 at 2:16 AM UTC, 39 minutes after Doe 4.

### Defendant Hoang Lien

37. Defendant Hoang Lien ("Lien") is the registered owner of the following IP address: 72.219.151.176.

38. Defendant Lien used this IP address to conduct the illegal activities complained of herein, including, but not limited to, the illegal distribution and republication of Plaintiff's copyright protected Motion Picture. Defendant conducted these infringing activities through the use of the E379 Hash to an incalculable number of other individuals, including those named in the instant action.

39. The infringing activity took place on January 3, 2012 at 2:37 AM UTC, 21 minutes after Doe 5.

### Defendant Doe 7

40. Defendant Doe 7 is unknown, but used the following IP address:   75.120.107.51.

41. Doe 7 used this IP address to conduct the illegal activities complained of herein, including, but not limited to, the illegal distribution and republication of Plaintiff's copyright protected Motion Picture. Defendant conducted his infringing activities through the use of the

//

1    E379 Hash to an incalculable number of other individuals, including those named in the instant

2    action.

3         42.      The infringing activity took place on January 3, 2012 at 3:02 AM UTC, 25 minutes

4    after Doe 6.

5                                    **Defendant Doe 8**

6         43.      Defendant Doe 8 is unknown, but used the following IP address:      96.229.217.165.

7         44.      Doe 8 used this IP address to conduct the illegal activities complained of herein,

8    including, but not limited to, the illegal distribution and republication of Plaintiff's copyright

9    protected Motion Picture.  Defendant conducted his infringing activities  through the use of the

10   E379 Hash to an incalculable number of other individuals, including those named in the instant

11   action.

12        45.      The infringing activity took place on January 3, 2012 at 3:21 AM UTC, 19 minutes

13   after Doe 7.

14                                   **Defendant Doe 9**

15        46.      Defendant Doe 9 is unknown, but used the following IP address:      68.32.45.69.

16        47.      Doe 9 used this IP address to conduct the illegal activities complained of herein,

17   including, but not limited to, the illegal distribution and republication of Plaintiff's copyright

18   protected Motion Picture.  Defendant conducted his infringing activities  through the use of the

19   E379 Hash to an incalculable number of other individuals, including those named in the instant

20   action.

21        48.      The infringing activity took place on January 3, 2012 at 3:32 AM UTC, 11 minutes

22   after Doe 8.

23                                   **Defendant Doe 10**

24        49.      Defendant Doe 10 is unknown, but used the following IP address:  67.170.113.159.

25        50.      Doe 10 used this IP address to conduct the illegal activities complained of herein,

26   including, but not limited to, the illegal distribution and republication of Plaintiff's copyright

27   protected Motion Picture.  Defendant conducted his infringing activities  through the use of the

28   //

1    E379 Hash to an incalculable number of other individuals, including those named in the instant

2    action.

3        51.    The infringing activity took place on January 3, 2012 at 4:21 AM UTC, 49 minutes

4    after Doe 9.

## IV. COPYRIGHT AND BITTORRENT

6        52.    BitTorrent is a peer-to-peer file sharing protocol that allows quick downloading of

7    large files using minimum bandwidth.  Unlike previously used technology, such as Limewire,

8    Kazaa, and Napster, BitTorrent allows for higher transfer speeds by locating pieces (or "bits") of the

9    file already present on other users' computers and downloading them simultaneously.  This is done

10   by joining into the "swarm," or collective, of peers to download and upload from each other

11   simultaneously.  Such process allows for downloading of popular content, such as copyright

12   protected television shows and motion pictures, much faster than using alternative technology.

13       53.    While the science of the BitTorrent process is admittedly convoluted, the process

14   each user goes through to download the file is quick and efficient.  If a user wants to download a

15   media file, he effortlessly opens the corresponding file on a BitTorrent client application.  Such files

16   can be readily found online or on infinite numbers of BitTorrent cataloging web sites.

17       54.    The downloader's BitTorrent client then extracts a list containing various tracker

18   locations which it then connects to that identifies IP addresses that have the file available.  Each IP

19   address identifies an uploader who is **currently** running BitTorrent software on his computer and is

20   **currently** offering the file to distribute and copy.  The downloader's BitTorrent program then

21   begins downloading the motion picture file without any further action from the user.

22       55.    The swarms conception begins with one initial user - called the "seed user" or

23   "seeder."  The seeder intentionally begins to share a file with a torrent swarm.  The original file thus

24   contains Plaintiff's entire copyrighted Motion Picture.

25       56.    New members of the swarm then connect to the "seeder" to download the file.  This

26   download creates an exact digital copy of Plaintiff's copyrighted Motion Picture.  As new infringers

27   join the swarm, the process repeats itself and expands the number of users in the collective swarm

28   to the thousands.  Each member is concurrently uploading and downloading portions of the same

9

1  exact digital copy with each other.  Thus, even if the initial seeder leaves the swarm, the file is

2  already spread amongst the entire swarm and can be downloaded at will by old and new members of

3  the swarm, even without the initial seeder.

4    57.    This process causes the file to be broken up over hundreds of pieces ("bits") that

5  make both downloading and uploading quicker and more efficient.  Each bit is then immediately

6  made available for distribution to others seeking the same file.  The effect of this method of

7  infringement means that every user who has a copy of the infringing material on a torrent network

8  must necessarily also be a source for others to download that same material.  Thus, even though the

9  initial seeder may leave the swarm, every downloader becomes an uploader for those seeking the

10  file.

11    58.    The total number of users participating in the swarm at any given time increases the

12  overall speed and efficiency at which all the other swarm members can download the entire file.

13  Thus, each user relies on the other swarm members for not only specific bits of the audiovisual file

14  he exchanges to or from specific users, but also he necessarily relies on *all* the other members of the

15  swarm to increase the speed at which he is able to download the file.  In effect, due to the nature of

16  an infringing swarm, every infringer is - and by necessity together - simultaneously both stealing the

17  Plaintiff's copyright protected material and redistributing it for others.

18    59.    BitTorrent also polices itself to encourage the continued infringement of Plaintiff's

19  copyrights.  If a user should feel that they simply want to download the requested content without

20  also serving as an uploading source for others, they become a "leecher."  Leeching is discouraged by

21  the swarm by stalling the downloads of leechers in order to preserve network speed for those who

22  are also contributing to the swarm.  Thus, BitTorrent is of no use to members unless they not only

23  copy, but also distribute the work in question.

24    60.    The Motion Picture at issue in this action is easily discernable as a professional

25  work.  Plaintiff is a premiere name in the adult entertainment industry and created the works using

26  professional performers, directors, cinematographers, lighting technicians, set designers and editors.

27  Plaintiff created each work with professional-grade cameras, lighting and editing equipment.

28  //

1    61.    Each of Plaintiff's works is marked with a trademark (Sean Cody) and a statement as

2  required by 18 U.S.C. § 2257 that age verification records for all individuals appearing in the works

3  are maintained by Plaintiff's custodian of records in San Diego, California.

4    62.    At various times, Plaintiff discovered and documented each Defendant, without

5  authorization, copying and distributing by and through a BitTorrent network, the Motion Picture

6  owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).  By so doing,

7  Defendants have knowingly and purposefully infringed, and induced others to infringe, Plaintiff's

8  copyrighted works.

9    63.    Defendants are contributing to a problem that threatens the profitability and viability

10  of Plaintiff.  Although Plaintiff cannot determine at this time the precise amount of revenue that it

11  has lost as a result of the peer-to-peer file sharing of its works, through BitTorrent software, the

12  amount of that lost revenue is enormous.

13                    **V.  ALL DEFENDANTS ARE MEMBERS OF THE SAME SWARM**

14    64.    Defendants are all members of a single collective peer-to-peer (hereinafter "P2P")

15  network that was used for the unlawful infringement of Plaintiff's copyright protected Motion

16  Picture.

17    65.    Defendants began this process by searching for and downloading BitTorrent software

18  that enabled them to search for and download Plaintiff's copyright protected work.

19    66.    The unique identifier created by the National Security Agency associated with this

20  particular action is the E379 hash.  Each and every Defendant is a member of the same collective

21  swarm associated with the E379 hash.  Each acted collectively, and in concert, in effectuating the

22  illegal and unauthorized sharing of Plaintiff's copyrighted work.

23    67.    Each and every Defendant was, or is, in possession of a computer that joined this

24  collective swarm for the purposes of illegally downloading Plaintiff's copyrighted work.  Each and

25  every computer used by Defendants harbored, or still does harbor, Plaintiff's copyrighted work

26  which was downloaded through the same exact swarm, on the same exact date, sharing the same

27  exact hash file.

28  //

_____11_____
*Complaint for Copyright Infringement*

68.    Each and every Defendant unlawfully republished and redistributed Plaintiff's Motion Picture. Defendants did not merely share multiple copies of the Motion Picture, but shared the exact same copy (as all have the same exact hash file), through the exact same swarm, on the exact same date. Such evidence shows that Defendants acted in concert and linked together in a massive collective effort and conspiracy to infringe on Plaintiff's exclusive rights in the copyright protected Motion Picture.

69.    Each Defendant used the same exact method of infringement by use of the BitTorrent file transfer protocol to upload and download Plaintiffs works. At no time did any Defendant have permission or license from Plaintiff to copy, distribute or publish the Motion Picture.

70.    After each Defendant had possession of the tracker file to find and locate each other member of the infringing swarm, each and every Defendant used that information to connect to other Defendants for the purpose of sharing Plaintiff's copyright protected work with other members of the swarm.

71.    Each and every Defendant then joined the same exact swarm, acting in concert and in a collective nature to upload and download the same exact motion picture, using the same exact unique hash identifier.

72.    After being connected to the BitTorrent swarm sharing the requested Motion Picture, each and every Defendant shared the Motion Picture between each other. Such action was done by breaking the larger work into smaller bits and giving and taking each bit from each other as needed to reassemble the infringing Motion Picture in its entirety on their computers.

73.    Because of the foregoing facts, each and every Defendant participated in the same exact swarm, infringing upon Plaintiff's exclusive rights in its work by uploading (distributing) and downloading (reproducing) Plaintiff's copyrighted film. Through such action each Defendant assisted each other, as members for the same exact swarm, to download the same exact infringing work.

//

//

*Complaint for Copyright Infringement*

# VI.  FIRST CAUSE OF ACTION

## (Copyright Infringement 17 U.S.C. §501)

74.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraph 1-73 above, inclusive.

75.     At all times relevant hereto, Plaintiff has been the producer and owner of the audiovisual work "Brandon & Pierce Unwrapped," which Defendants willful and intentionally reproduced and distributed by and through the Internet using BitTorrent protocol.

76.     Plaintiff is informed and believes and based thereon alleges that the U.S. Copyright Office received Plaintiff's full and complete copyright application on or about December 22, 2011. Receipt of a full and complete copyright application satisfies the registration requirements of the U.S. Copyright Office as well as this jurisdiction.  Therefore, Plaintiff holds a federally registered copyright of the Motion Picture from the United States Copyright Office.

77.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Motion Picture and to distribute it - rights willfully and maliciously infringed upon by Defendants.

78.     Plaintiff is informed and believed and based thereon alleges that Defendants, without authorization, reproduced and distributed Plaintiff's copyright registered Motion Picture by and through the Internet using BitTorrent technology.

79.     Defendants knew or should have known (and if they did not know it was only through willful blindness) that they were not authorized to reproduce or distribute Plaintiff's Motion Picture.

80.     As a direct result of Defendants' infringing actions, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. §501(c), and to its attorneys' fees pursuant to 17 U.S.C. § 505.

81.     The conduct of Defendants is, and will continue to, cause Plaintiff serious irreparable harm.  Said harm will continue unless Defendants are restrained from such conduct by this Court. Plaintiff has no adequate remedy at law to stop such conduct.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief stopping Defendants from further infringing upon

13

1 Plaintiff's exclusive rights, and ordering Defendants to destroy all copies of the Motion Picture
2 made in violation of Plaintiff's exclusive rights under the Copyright Act.

### VII.  SECOND CAUSE OF ACTION
### (Contributory Copyright Infringement)

5   82.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth
6 in paragraph 1-81 above, inclusive.

7   83.   Each Defendant has either (a) directly engaged in the unauthorized reproduction and
8 distribution of Plaintiff's copyright registered work as set forth above; or (b) with actual or
9 constructive knowledge of the infringing activity, materially contributed to instrumentalities used to
10 infringe Plaintiff's work.

11   84.   For those Defendants who directly engaged in the unauthorized reproduction and
12 distribution of Plaintiff's work, each Defendant materially contributed to the direct infringement of
13 the aforementioned named Defendants by providing pieces of Plaintiff's copyright registered work
14 to those Defendants directly and/or by allowing those Defendants to download the infringing copies
15 from other peers more quickly and more efficiently by adding to the overall efficiency of the swarm
16 on the date in question.

17   85.   Each Defendant knew he or she was infringing upon Plaintiff's copyright and knew
18 the other swarm participates, including the other Defendants, also were infringing upon Plaintiff's
19 work.

20   86.   Each of the peers who illegally downloaded the Motion Picture derived portions of
21 their illegal replication of the file from multiple peers including the other Defendants.  At the same
22 time, each Defendant offered pieces of the file to help other peers, including the remaining
23 Defendants, replicate and compile new copies of the file.

24   87.   When users all possess the same infringing work with the same exact hash number,
25 as is the case here, it is because each infringer possess an exact digital copy, containing the exact
26 bits unique to that file, of the original work.  In essence, although hundreds of users may be
27 uploading the copyrighted work, you will receive only the exact parts of a singular upload, not a
28 compilation of available pieces from various uploads.

14

1    88.    Each Defendant published the exact same hash file to the BitTorrent network.

2    89.    Each and every Defendant downloaded, uploaded and distributed the Motion Picture

3    to each other, in concert with one another, dependent on each other, and through use of the exact

4    same protocol.

5    90.    Because it is the exact same Motion Picture, using the exact same hash, in the same

6    general time frame, the transaction of events at issue in this Complaint are common to all

7    Defendants, thus rendering the Defendants properly joined in this action.

8    91.    Each Defendant assisted other members of the swarm, by either exchanging pieces

9    with that user directly or by providing an alternative source for peers thereby making the swarm

10   work more efficiently and increasing the speed in which each other Defendant was able to download

11   the entire Motion Picture.

12   92.    The Defendants were conscious of their own infringement and of the fact that

13   multiple other persons derivatively downloaded from them the file containing Plaintiff's copyright

14   protected Motion Picture.

15   93.    The infringement by other BitTorrent users could not have occurred but for the

16   Defendants' participation and the participation of others.  As such, the Defendants' participation in

17   the infringing activities of others is substantial.

18   94.    Each Defendant is contributory liable for the infringing acts of the other Defendants.

19   95.    Each Defendant is jointly and severally liable for the harm Plaintiff suffered as a

20   result of the Defendants contribution in the infringement of its copyright registered work including

21   the continuing nearly limitless distribution of the infringing Motion Picture across the Internet.

22   96.    As a direct result of Defendants' infringing actions, Plaintiff is entitled to either

23   actual or statutory damages pursuant to 17 U.S.C. §50(c), and to its attorneys' fees pursuant to 17

24   U.S.C. § 505.

25   97.    The conduct of Defendants is, and will continue to, cause Plaintiff serious irreparable

26   harm.  Said harm will continue unless Defendants are restrained from such conduct by this Court.

27   Plaintiff has no adequate remedy at law to stop such conduct.  Pursuant to 17 U.S.C. §§ 502 and

28   503, Plaintiff is entitled to injunctive relief stopping Defendants from further infringing upon

*Complaint for Copyright Infringement*

1    Plaintiff's exclusive rights, and ordering Defendants to destroy all copies of the Motion Picture

2    made in violation of Plaintiff's exclusive rights under the Copyright Act.

3        98.     For those Defendants who materially contributed - with knowledge - the

4    instrumentalities used to accomplish the infringement, such Defendants accessed, or controlled

5    access to the Internet connection used in performing the unauthorized copying and sharing of

6    Plaintiff's Motion Picture as described above.

7        99.     Plaintiff alternatively alleges that Defendants failed to adequately secure their

8    Internet access, whether accessible only through their computer when physically connected to the

9    Internet, or accessible to many computers by use of a router, and failed to prevent its unlawful use

10   for the purposes alleged herein.

11       100.    Each Defendant had knowledge of the infringing activities complained of herein as

12   they were repeatedly warned in their Terms of Service contracts with their ISPs.  Furthermore, each

13   Defendant contractually agreed to specifically assume any liability for such infringing activities.

14       101.    Defendants were required to secure their routers and failed to take reasonable steps

15   within their control to secure their accounts, due to either conscious disregard, or willful blindness

16   for the threat of infringement.

17       102.    In fact, most ISPs, including those who provided internet access service for

18   Defendants, require subscribers to secure wireless routers with passwords.

19       103.    Upon information and belief, Plaintiff alleges that Defendants' failure to secure their

20   Internet access allowed for the copying and sharing of Plaintiff's Motion Picture on Defendants'

21   respective Internet connections, and interfering with Plaintiff's exclusive rights in the copyrighted

22   work.

23       104.    By virtue of this unsecured access, Defendants - with knowledge of the threat of

24   infringement - allowed the use of their Internet access accounts to perform the above-described

25   copying and sharing of Plaintiff's Motion Picture.

26       105.    Had Defendants not ignored their contractual responsibilities and warnings from

27   their respective ISPs (as well as general common sense) and taken reasonable measures under their

28   //

1  control to secure access to their Internet connections, such infringements as those described above

2  would not have occurred by the use of their Internet accounts.

3      106.   Defendants' willful blindness allowed others to unlawfully copy and share Plaintiff's

4  copyrighted work, causing financial harm to Plaintiff and unlawfully interfering with Plaintiff's

5  exclusive rights in its Motion Picture.

6      107.   As a direct result of Defendants' infringing actions, Plaintiff is entitled to either

7  actual or statutory damages pursuant to 17 U.S.C. §50(c), and to its attorneys' fees pursuant to 17

8  U.S.C. § 505.

9      108.   The conduct of Defendants is, and will continue to, cause Plaintiff serious irreparable

10  harm.  Said harm will continue unless Defendants are restrained from such conduct by this Court.

11  Plaintiff has no adequate remedy at law to stop such conduct.  Pursuant to 17 U.S.C. §§ 502 and

12  503, Plaintiff is entitled to injunctive relief stopping Defendants from further infringing upon

13  Plaintiff's exclusive rights, and ordering Defendants to destroy all copies of the Motion Picture

14  made in violation of Plaintiff's exclusive rights under the Copyright Act.

## VIII.  THIRD CAUSE OF ACTION

### (Negligence)

17      109.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth

18  in paragraph 1-108 above, inclusive.

19      110.   Defendants accessed or controlled access to the Internet connection used in

20  performing the unauthorized copying and sharing of Plaintiff's Motion Picture as described above.

21      111.   Plaintiff alternatively alleges that Defendants failed to adequately secure their

22  Internet access, whether accessible only through their computer when physically connected to the

23  Internet, or accessible to many computers by use of a router, and failed to prevent its unlawful use

24  for the purposes alleged herein.

25      112.   Reasonable Internet users take steps to secure their Internet access accounts to

26  prevent the use of such accounts for nefarious and illegal purposes.  As such, Defendants' failure to

27  secure their Internet access accounts, and thereby prevent such illegal uses thereof, constitutes a

28  breach of the ordinary care that reasonable persons exercise in using an Internet access account.  In

1    fact, more Internet service providers, including those who provided service for Defendants,

2    generally require in their Terms of Service or Terms of Use that subscribers secure wireless routers

3    with passwords.

4         113.   Upon information and belief, Plaintiff alleges that Defendants' failure to secure their

5    Internet access allowed for the copying and sharing of Plaintiff's Motion Picture on Defendants'

6    respective Internet connections, and interfering with Plaintiff's exclusive rights in the copyrighted

7    work.

8         114.   By virtue of this unsecured access, Defendants negligently allowed the use of their

9    Internet access accounts to perform the above-described copying and sharing of Plaintiff's

10    copyrighted Motion Picture.

11         115.   Had Defendants taken reasonable care and steps in securing access to their Internet

12    connections, such infringements as those described above would not have occurred by the use of

13    their Internet access accounts.

14         116.   Defendants' negligent actions allowed others to unlawfully copy and share Plaintiff's

15    copyrighted Motion Picture, proximately causing financial harm to Plaintiff and unlawfully

16    interfering with Plaintiff's exclusive rights in the Motion Picture.

17         117.   As a direct result of Defendants' infringing actions, Plaintiff is entitled to either

18    actual or statutory damages pursuant to 17 U.S.C. §50(c), and to its attorneys' fees pursuant to 17

19    U.S.C. § 505.

20         118.   The conduct of Defendants is, and will continue to, cause Plaintiff serious irreparable

21    harm.  Said harm will continue unless Defendants are restrained from such conduct by this Court.

22    Plaintiff has no adequate remedy at law to stop such conduct.  Pursuant to 17 U.S.C. §§ 502 and

23    503, Plaintiff is entitled to injunctive relief stopping Defendants from further infringing upon

24    Plaintiff's exclusive rights, and ordering Defendants to destroy all copies of the Motion Picture

25    made in violation of Plaintiff's exclusive rights under the Copyright Act.

26    //

27    //

28    //

*Complaint for Copyright Infringement*

**PRAYER FOR RELIEF**

1.   For an injunction providing:

     Defendant shall be and hereby is enjoined from directly or indirectly infringing upon Plaintiff's copyrights in the Motion Picture or any other works, whether now in existence or later created, that are owned or controlled by Plaintiff (or any parent, subsidiary, or affiliate of Plaintiff), including without limitation by using the Internet or any online media distribution system to reproduce (i.e. download) any of Plaintiff's works, to distribute (i.e. upload) any of Plaintiff's works, or to make any of Plaintiff's works available for distribution to the public, except pursuant to a lawful license or with the Plaintiff's express written consent.  Defendant shall also destroy all copies of Plaintiff's works that Defendant has downloaded onto any computer hard drive or server and shall destroy all copies of those downloaded works transferred onto any physical medium or device in Defendant's possession, custody, or control.

2.   For damages for each infringement of each copyrighted work pursuant to 17 U.S.C. § 504.  These damages may be actual or statutory, but if statutory damages are elected, the Defendant's acts were willful in nature, justifying an award of up to $150,000 per infringement, and Plaintiff reserves the right to make such an election.

3.   For Plaintiff's costs in this action.

4.   For Plaintiff's attorneys' fees incurred in bringing this action.

5.   For such other and further relief, either at law or in equity, general or special, to which they may be entitled.

DATED: January 15, 2013          LANG, HANIGAN & CARVALHO, LLP.

                          By _s/ Arthur Carvalho, Jr._
                            Arthur Carvalho, Jr.
                            Attorneys for Plaintiff 808 Holdings, LLC.